IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00467-BO

KENDALL KLETT, )
        Plaintiff, )
)
)
v. )
)     O R D E R
NORTH CAROLINA DEPARTMENT OF )
HEALTH AND HUMAN SERVICES, )
*et al.*, )
        Defendants. )

This cause comes before the Court on defendants' motion to dismiss [DE 23], plaintiff's motion to strike [DE 28], and plaintiff's motion for leave to supplement opposition to defendants' motion to dismiss. [DE 33]. The appropriate responses and replies have been filed, or the time for doing so has expired, and the motions are ripe for ruling. For the reasons that follow, defendants' motion to dismiss is granted in part and plaintiff's motions are denied as moot.

## BACKGROUND

On August 24, 2023, plaintiff filed a complaint against the North Carolina Department of Health and Human Services (NC DHHS) and various state employees in their official capacities for alleged violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et. seq.*, and the Genetic Information Nondiscrimination Act (GINA), 42 U.S.C. §§ 2000ff *et. seq.* The alleged violations arose out of NC DHHS's COVID-19 vaccination and employment policies.

In her second amended complaint, plaintiff alleges as follows. Plaintiff was employed as an industrial hygienist, also known as an Asbestos Inspector, in the Health Hazard Control Unit in the Division of Public Health, Department of Health and Human Services, from May 2016 to

December 2021. Plaintiff alleges that she is a qualified employee under the ADA and that her employment was terminated on December 3, 2021, for failing to comply with defendants' policy regarding COVID-19 testing and face coverings, as an alternative to proof of full vaccination (COVID Policy). Plaintiff alleges that, under the State's COVID Policy, which was implemented on September 1, 2021, state workers were not mandated to take the COVID vaccines. Instead, all employees were to be administered a weekly COVID test and report the results, with an exemption provided for employees who showed proof of full COVID vaccination. Plaintiff alleges that the COVID Policy created plaintiff's de facto disability (the absence of COVID vaccine) and thereby limited plaintiff's major life activity of working.

Plaintiff alleges that the defendants' COVID Policy to conduct weekly testing on only unvaccinated workers resulted in discrimination based on disability. Plaintiff alleges that she developed natural immunity after she contracted COVID-19 and that defendants denied her request for medical exemption to the vaccine policy based on her natural immunity. Plaintiff further alleges that her request for a reasonable accommodation to continue working from home was denied and that she was retaliated against after she complained about the COVID Policy.

Plaintiff alleges claims under the ADA for disability discrimination; failure to grant a reasonable accommodation to plaintiff as a qualified, disabled employee; failure to engage in an interactive process with plaintiff or meaningfully discuss reasonable accommodations with plaintiff; unlawful discrimination against plaintiff after she opposed defendants' discriminatory practices; discrimination on the basis of medical testing of employees; wrongful termination; and retaliation. Plaintiff also alleges that the disclosure of her vaccination status to defendants violates Title II of GINA. Defendants have moved to dismiss plaintiff's claims pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal for lack of personal jurisdiction. When personal jurisdiction has been challenged on the papers alone, the plaintiff must make a prima facie case showing that personal jurisdiction exists, and a court construes all facts and inferences in favor of finding jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). A court may consider affidavits attached to a motion when determining whether the plaintiff has made a prima facie showing of personal jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998).

3

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Id.* "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation and citation omitted). However, a court does not "act as an advocate for a pro se litigant," *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978), nor is it required to "'discern the unexpressed intent of the plaintiff[.]'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n. 3 (4th Cir. 2006) (en banc)).

A. *Official capacity claims against the individual defendants*

Plaintiff has named each of the individual state employee defendants in their official capacity. A suit against a government employee in his or her official capacity is, ostensibly, an additional attempt to assert a claim against the state itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (citation omitted)). Plaintiff's second amended complaint does not identify any specific action by any individual defendant which would support an award of damages against that individual. Plaintiff's claims against the individual defendants,

4

all employees of NC DHHS, who have been named only in their official capacities, are duplicative of her claims against NC DHHS, and the claims against these defendants are properly dismissed.

B. *Defamation*

In her second amended complaint, plaintiff makes passing reference to "false and defamatory statements" by defendants in written warning letters and her final dismissal letter. [DE 22] ¶ 103. This bald statement is insufficient to plausibly allege a claim for defamation under state law. To the extent such a claim has been alleged, plaintiff's defamation claim is dismissed. Plaintiff's motion to strike defendant's reply, which addresses her arguments related to a claim for defamation, is therefore denied as moot.

C. *ADA claims*

Plaintiff alleges that she was discriminated against because the COVID Policy implemented by the defendants created a "de facto disability" due to plaintiff's unvaccinated status and her natural immunity to COVID-19 after contracting the virus. Plaintiff alleges that the requirement that she either show proof of vaccination or submit to regular COVID-19 testing in accordance with the COVID Policy amounted to discrimination based on her disability. Plaintiff then alleges that her termination for failure to comply with the COVID Policy was in violation of her rights under the ADA.

Under the ADA, covered employers may not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A plaintiff alleging employment discrimination does not have to specifically plead every element of a prima facie case for discrimination or retaliation in her complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Those elements, however, provide a useful measuring tool for her allegations. *See Gaines v. Balt. Police Dep't*, 657 F.Supp.3d 708, 734 (D. Md. 2023). To establish a claim for disability discrimination

5

under the ADA, a plaintiff must allege facts which would show (1) that she has a disability, (2) that she is a qualified individual for the employment opportunity, and (3) that the employer took adverse employment action because of her disability. *See Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). Discrimination constituting a violation of the ADA also includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee[.]" 42 U.S.C. § 12112(b)(5)(A). A plaintiff establishes a prima facie case of failure to accommodate under the ADA by showing "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (citation omitted).

"An individual is disabled under the ADA . . . if he or she: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Davis v. Univ. of N. Carolina*, 263 F.3d 95, 99 (4th Cir. 2001); *see also* 42 U.S.C. § 12102(1)(A). Major life activities include "caring for oneself," "thinking, communicating, interacting with others, and working;" as well as the "operation of a major bodily function". 29 C.F.R § 1630.2(i).

Plaintiff has failed to plausibly allege that she is disabled under the ADA. "Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal *choice* by [plaintiff] that, while hers to make in this context, cannot be considered an impairment under the ADA." *Speaks v. Health Sys. Mgmt., Inc.*, No. 522CV00077KDBDCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022).

6

Nor has plaintiff plausibly alleged that she has a record of a disability or was regarded as having a disability. "An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). A person is regarded as having a disability where "she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3).

Plaintiff's allegations do not reflect a history of or having been misclassified as having any impairment by defendants, or that she had an actual or perceived impairment. Moreover, as plaintiff's allegations support, the COVID Policy implemented by defendants was applied to all employees. But "to be perceived as having a disability, one must be perceived as different from most people in the general population." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 168 (2d Cir. 2024). Here, plaintiff's allegations do not plausibly support that she was "singled out because of any perception that [s]he had an impairment that substantially limited h[er] as compared to others." *Id.*; *see also Jorgenson v. Conduent Transp. Sols., Inc.*, No. CV SAG-22-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023), *aff'd*, No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023).

As plaintiff has failed to plausibly allege that she is an individual with a disability as defined by the ADA, her discrimination and reasonable accommodation claims are dismissed.

To the extent plaintiff has alleged a claim that defendants violated the ADA by subjecting her to a medical examination, this claim also fails. Under the ADA, an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such

7

examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). But "[d]efendant[s'] inquiry regarding, and/or requirement that Plaintiff[] provide, [her] vaccination status 'does not constitute a medical examination or an inquiry about a disability or disabling condition.'" *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 155 (D. Md. 2024) (citation omitted). Accordingly, to the extent plaintiff has raised such a claim, this claim is dismissed.

Plaintiff also alleges that defendants retaliated against her after she told them that the COVID Policy and weekly testing for unvaccinated employees violated the ADA and when she requested the reasonable accommodation of being able to work from home. *See* Sec. Amd. Compl. ¶¶ 49; 90-102. A plaintiff establishes a prima facie case of retaliation under the ADA where she can show that she engaged in protected activity, that her employer took adverse action against her, and that there is a causal connection between the protected activity and the adverse action. *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021).

Defendant has not moved to dismiss plaintiff's ADA retaliation claim. Making a request for an accommodation is protected activity under the ADA. *Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 445 (E.D. Va. 2022). Moreover, a plaintiff "is not required to prove that the opposed conduct was actually an ADA violation, but merely that there was 'a reasonable, good faith belief' that the conduct violated the ADA." *Id.*; *see also Peeples v. Coastal Off. Prods., Inc.*, 203 F. Supp. 2d 432, 465 (D. Md. 2002), *aff'd*, 64 F. App'x 860 (4th Cir. 2003) ("A[DA] retaliation claim does not require that the claimant be disabled.") (internal quotation and citation omitted). Taking plaintiff's claim as true, and as defendants have not requested dismissal of this claim, the Court will permit this claim to proceed.

D. *GINA claims*

Plaintiff's claims under GINA fail. GINA prohibits employers from discriminating against their employees "because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1). Genetic information includes information about an employees' genetic tests, and a genetic test is "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." *Id.* §§ 2000ff(4)(A); (7)(A).

Courts have held that COVID-19 vaccine requirements do not implicate employee protections under GINA. *See Millwood v. Tyson Foods, Inc.*, No. 8:23-CV-6004-DCC-KDW, 2024 WL 3666446, at *10 (D.S.C. June 14, 2024), *report and recommendation adopted,* No. 8:23-CV-06004-DCC, 2024 WL 3593815 (D.S.C. July 31, 2024). Moreover, as plaintiff alleges, she declined to participate in COVID testing. Thus, "even assuming these tests would have produced genetic information for GINA's purposes, [plaintiff] was never tested, meaning [defendants] had no 'genetic information'". *Daniel v. Honeywell Int'l Inc.*, No. 22-CV-3184 (ECT/DLM), 2023 WL 6392404, at *4 (D. Minn. Oct. 2, 2023), *aff'd,* No. 23-3476, 2024 WL 3634227 (8th Cir. Aug. 2, 2024). Plaintiff's GINA claims are based on conclusory and speculative allegations and fail to state a claim.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion to dismiss plaintiff's second amended complaint [DE 23] is GRANTED in part and DENIED in part. Plaintiff's claims against the individual defendants, her defamation claim, her ADA discrimination and accommodation claims, and her GINA claims are DISMISSED. Plaintiff's ADA retaliation claim may proceed.

9

Plaintiff's motion to strike defendant's reply [DE 28] is DENIED as moot. Plaintiff's motion to supplement her opposition to the motion to dismiss [DE 33] is DENIED. Plaintiff's motion for status conference [DE 40] is DENIED.

SO ORDERED, this 18 day of September 2025.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE