IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00467-BO

| | | |
|---|---|---|
| KENDALL KLETT,<br>Plaintiff,<br><br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER |

This cause comes before the Court on cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. The appropriate responses and replies have been filed, or the time for doing so has expired, and in this posture the motions are ripe for disposition. For the reasons that follow, defendant's amended motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

## BACKGROUND

Plaintiff, who proceeds *pro se*, commenced this action by filing a complaint against defendant, her former employer, and others on August 24, 2023. [DE 1]. Plaintiff was permitted leave to file a second amended complaint in which she alleged claims under Americans with Disabilities Act (ADA),42 U.S.C. §§ 12101, *et. seq*., and the Genetic Information Nondiscrimination Act (GINA), 42 U.S.C. §§ 2000ff, *et. seq*. The alleged violations arose out of defendant's COVID-19 vaccination and employment policies.

By order entered September 19, 2025, the Court granted defendants' motion to dismiss the second amended complaint in part. [DE 42]. The Court dismissed the individual defendants and

all but plaintiff's ADA retaliation claim, finding that defendant had not argued that that claim specifically should be dismissed.

Defendant then answered the complaint, the case proceeded through discovery, and the instant motions followed. The following facts appear not to be in dispute for purposes of the motions for summary judgment. *See* [DE 86]; [DE 87-1]. Plaintiff worked as an asbestos inspector within the Health Hazards Control Unit of the Division of Public Health. Plaintiff performed her job duties effectively while working remotely, though plaintiff was required to retrieve permit review files from the office during a weekly rotation. On July 29, 2021, then-Governor Roy Cooper enacted EO 224, which required cabinet agencies, including defendant, to verify the COVID vaccination status of their employees in order to "assist in the protection of the health and safety of state employees and the general public." [DE 80-1] ¶ 11. In response, the North Carolina Office of State Human Resources (NCOSHR) adopted the Requirements for COVID-19 Testing and Face Coverings as an Alternative to Proof of Full Vaccination Policy (COVID Policy or Policy), which went into effect on September 1, 2021. Under the COVID Policy, state employees were required to either (1) provide verification of their vaccination status or (2) take weekly COVID tests and report those results through a secure portal. The Policy permitted state employees to submit test results from antigen or molecular tests authorized by the FDA. Employees who were vaccinated were exempt from weekly testing requirements. Defendant developed guidelines for disciplinary action which would apply to employees who did not comply with the Policy.

At the time the Policy was enacted, plaintiff began opposing weekly testing requirements. Plaintiff requested an accommodation of working fully remotely or that her naturally acquired immunity be recognized as fully vaccinated under the Policy. Plaintiff did not submit weekly tests and did not submit proof of vaccination. On October 6, 2021, plaintiff was informed by email that

she was not in compliance with the Policy. Following the 6 October 2021 email, plaintiff continued not to submit weekly tests or proof of vaccination. After a pre-disciplinary conference was held, plaintiff was suspended without pay on November 15, 2021. Plaintiff continued not to submit weekly tests. On December 3, 2021, plaintiff's employment was terminated.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

When deciding cross-motions for summary judgment, a court considers each motion separately and resolves all factual disputes and competing inferences in the light most favorable

to the opposing party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.[1]

The Court considers first defendant's motion for summary judgment, and thus construes the facts in the light most favorable to plaintiff. [2] Plaintiff alleges that defendant retaliated against her after she told them that the COVID Policy and weekly testing for unvaccinated employees violated the ADA and when she requested the reasonable accommodation of being able to work from home. *See* Sec. Amd. Compl. ¶¶ 49; 90-102. The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203(a). A plaintiff establishes a prima facie case of retaliation under the ADA when she can show that she engaged in protected activity, that her employer took adverse action against her, and that there is a causal connection between the protected activity and the adverse action. *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021). A plaintiff must establish a prima facie case whether she relies on direct evidence or whether she relies on the *McDonnell Douglas* burden-shifting framework. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015). If the plaintiff can establish a prima facie case of ADA retaliation, and she is proceeding under the burden-shifting framework, the burden then shifts to her employer to show that it had a legitimate, nondiscriminatory reason for the adverse action; if employer carries its burden, the burden "shifts back to the plaintiff to show that the proffered reason is pretext." *Id.* at 578.

---

[1] The Court GRANTS defendant's motion for leave to file a supplemental Local Rule 56.1 Statement of Material Facts and Appendix. [DE 80].

[2] Defendant makes several arguments in support of its motion for summary judgment. Because the Court concludes that defendant is entitled to summary judgment in its favor on the merits of plaintiff's ADA retaliation claim, it declines to reach defendant's alternative arguments.

Protected activity includes opposing discriminatory employment practices, *see Moss v. Saja Rest. Grp., LLC*, 670 F. Supp. 3d 349, 363 (W.D. Va. 2023), and making a request for an accommodation for a disability is protected activity under the ADA. *Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 445 (E.D. Va. 2022). Moreover, a plaintiff "is not required to prove that the opposed conduct was actually an ADA violation, but merely that there was 'a reasonable, good faith belief' that the conduct violated the ADA." *Id.*; *see also Peeples v. Coastal Off. Prods., Inc.*, 203 F. Supp. 2d 432, 465 (D. Md. 2002), *aff'd*, 64 F. App'x 860 (4th Cir. 2003) ("A[DA] retaliation claim does not require that the claimant be disabled.") (internal quotation and citation omitted). An adverse action is one which is materially adverse, "meaning that the plaintiff must show that the action 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Laird v. Fairfax Cnty., Virginia*, 978 F.3d 887, 893 (4th Cir. 2020) (citation omitted). Finally, the protected activity must be a but-for cause of the adverse employment action, which may be established either by demonstrating sufficient temporal proximity between the protected activity and adverse action or by establishing facts which otherwise suggest but-for causation. *Kelly v. Town of Abingdon, Virginia*, 558 F. Supp. 3d 289, 302 (W.D. Va. 2021).

Termination from employment amounts to materially adverse action under the ADA's prohibition on retaliation. Plaintiff now admits that she did not request accommodation based on a disability. *See, e.g.*, [DE 86] ¶ 32; [DE 77-3] Klett Depo. p. 52. Thus, she cannot base her protected activity on making a request for a reasonable accommodation under the ADA. Rather, plaintiff proceeds on a theory that she was retaliated against because she reasonably believed that the COVID Policy violated 42 U.S.C. § 12112(d)(4)(A), which provides that

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a

> disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

*Id. See also* [DE 72]. In *Johnson v. Goodwill Ind. of Eastern North Carolina, Inc.*, No. 5:97-CV-740-BR1, 1998 WL 1119856 (E.D.N.C. Dec. 17, 1998), the court decided on summary judgment that, where the plaintiff had objected to a medical exam under § 12112(d)(4)(A), her refusal to submit to the medical exam did not constitute protected activity under the ADA for purposes of a retaliation claim. The *Johnson* court specifically held "plaintiff asks the court to adopt a rule which would immunize employee conduct associated with a refusal to take a medical exam if the employee believes it to be unlawful. Such a rule would certainly tie the hands of employers and allow employees to avoid such exams by merely labeling them as improper." *Id.* at *5. The Court finds this reasoning persuasive, and determines that plaintiff's objection to the COVID Policy based on § 12112(d)(4)(A) did not constitute protected activity under the ADA.

But even assuming, without deciding, that plaintiff has demonstrated that genuine issues of material fact exist as whether she engaged in protected activity, there is simply no genuine dispute of material fact that plaintiff's employment was terminated, not because she engaged in protected activity under the ADA, but because she failed to comply with the COVID Policy. The COVID Policy went into effect on September 1, 2021. The COVID Policy stated that "[e]mployees may be subject to disciplinary action for violations of this Policy, up to and including dismissal." [DE 77-10] p. 17. The COVID Policy required all state employees to verify vaccination status or weekly testing through an online portal. Plaintiff describes her first formal, written ADA opposition as being sent on October 1, 2021, requesting that her natural immunity to COVID-19 be recognized as a sufficient ground for exemption from the COVID Policy. [DE 73] ¶ 78. Plaintiff's employment was terminated on December 3, 2021. "Because the COVID-19 policy was in place before any conduct plaintiff alleges to be protected activity occurred and because the

policy clearly stated that dismissal could be a consequence for non-compliance, it is implausible to suggest that [plaintiff's] termination was a result of any of [her] protected activity rather than a result of [her] decision not to comply with the policy." *Schneider v. Cnty. of Fairfax*, No. 122CV871LMBWEF, 2023 WL 2333305, at *6 (E.D. Va. Mar. 2, 2023), *aff'd*, No. 23-1303, 2023 WL 5524752 (4th Cir. Aug. 28, 2023); *see also Doe v. Johns Hopkins Univ. Applied Physics Lab'y*, No. CV MJM-25-861, 2026 WL 860587, at *11 (D. Md. Mar. 30, 2026); *Jorgenson v. Conduent Transp. Sols., Inc.*, No. CV SAG-22-01648, 2023 WL 1472022, at *6 (D. Md. Feb. 2, 2023), *aff'd*, No. 23-1198, 2023 WL 4105705 (4th Cir. June 21, 2023); *Speaks v. Health Sys. Mgmt., Inc.*, No. 522CV00077KDBDCK, 2022 WL 3448649, at *6 (W.D.N.C. Aug. 17, 2022). Plaintiff relies on evidence which supports that her COVID testing objections were not considered during the disciplinary process to argue that there is a genuine issue of fact as to causation, [DE 84] at 31, but that evidence actually supports defendant's motion – plaintiff's disciplinary process was not tied to her good faith belief that she was opposing conduct in violation of the ADA, but rather was due to her failure to comply with the COVID Policy, which applied to all of defendant's employees. "[A]llegations of adverse actions that occur as a 'result of generally applicable workplace policies' fail to state a retaliation claim because 'absent allegations of more direct hostile conduct, a reasonable employee would not be dissuaded from taking protected action simply because [he is] subject to the same policies as other employees.'" *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 171 (2d Cir. 2024) (citation omitted).

And even again assuming, without deciding, that plaintiff has shown that genuine issues of material fact exist as to her prima facie case, she has failed to show that genuine issues of fact preclude a finding in defendant's favor on the issue of pretext. Defendant's proffered legitimate basis for plaintiff's termination is plaintiff's failure to comply with the COVID Policy. Plaintiff

has admitted that she did not submit a record of vaccination status or test results in accordance with the COVID Policy. Klett Depo. p. 47. "A plaintiff may establish pretext through two routes. The first is offering evidence that the employer's justification is 'unworthy of credence.' . . . The second is adducing other forms of circumstantial evidence sufficiently probative of discrimination." *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 257 (4th Cir. 2025) (citation omitted).

Plaintiff was issued progressive discipline for her failure to comply with the COVID Policy, which culminated in the termination of her employment. Nothing in the record would support that defendant's proffered basis for plaintiff's termination is unworthy of credence. Nor is there sufficient circumstantial evidence which could permit a fact-finder to find pretext – there is no suggestion that defendant's reason for plaintiff's termination changed over time, that key decisionmakers made discriminatory comments about plaintiff, or that defendant failed to follow its own disciplinary procedures. *Id.* at 258-261. In her opposition, plaintiff relies on defendant's litigation conduct, specifically its filing of a suit in state court concerning the scope of its settlement with plaintiff regarding her employment grievances. Defendant's litigation conduct does not create a genuine issue of fact as to whether its reasons for terminating plaintiff's employment were pretextual. Plaintiff further argues that defendant's asserted legitimate, non-retaliatory basis that the COVID testing requirement was "job-related and consistent with business necessity" fails because defendant has not shown that there was any need to test plaintiff, specifically. [DE 84] at 34. But, as discussed above, the COVID Policy applied universally to each of defendant's employees. Plaintiff further contends that internal emails show that the decision to terminate her employment preceded her opposition to compliance with the COVID Policy. Not so. The 1 October 2021 email on which plaintiff relies states that "all had been done to work with" plaintiff,

that plaintiff had "made it clear she is not going to comply" with the COVID Policy, and that plaintiff would "need to move to disciplinary action after this." [DE 74-37]. Rather that supporting an inference of pretext, the email on which plaintiff relies supports that disciplinary proceedings would be instituted due to plaintiff's failure to comply with the COVID Policy. Plaintiff has failed to create a genuine issue of material fact as to pretext.

In sum, having considered defendant's motion for summary judgment and having viewed the evidence in the light most favorable to plaintiff as the non-moving party, there are no genuine disputes of material fact and defendant is entitled to summary judgment in its favor on plaintiff's remaining claim for retaliation. Plaintiff's motion for summary judgment on her retaliation claim, which requires the Court to view the evidence in the light most favorable to defendant, must therefore be denied.

CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion for leave to file a supplemental Local Rule 56.1 Statement of Material Facts and Appexdix [DE 80] is GRANTED. Defendant's amended motion for summary judgment [DE 77] is GRANTED and plaintiff's motion for summary judgment [DE 71] is DENIED. The Clerk is DIRECTED to enter judgment in defendant's favor and close this case.

SO ORDERED, this 14 day of September 2026.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE